# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | 1:11-cv-680 LJO GSA |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BY THE COURT** |
| v. | |
| | (Document 12) |
| ANTHONY PAOLILLI, et al., | |
| Defendants. | |

On August 31, 2011, Plaintiff J & J Sports Productions, Inc. ("Plaintiff") filed the instant Motion for Default Judgment against Defendants Bonfiglios Inc., Giulia Paolilli, and Anthony Paolilli individually and d/b/a B.B.'s Lounge and Oyster Bar & Grill a/k/a Giulia Italian Restaurant ("Defendants") . (Doc. 12). Defendants have not filed any oppositions. A hearing was held on October 21, 2011 at 9:30 am. Thomas P. Riley, Jr. appeared telephonically on behalf of Plaintiff. No appearance was made by or on behalf of Defendants.

The day before the hearing on the Motion for Default Judgment, a Notice of Bankruptcy was filed on behalf of Defendant Giulia Paolilli. (Doc. 19). The Court ordered that Plaintiff file a supplemental brief addressing how Defendant Giulia Paolilli's bankruptcy petition effects the Motion for Default Judgment. The Court ordered that the additional briefing be filed no later than November 30, 2011. Another hearing was set for December 15, 2011 at 10:00 am.

1

Plaintiff filed the supplemental brief on November 30, 2011. The Court has reviewed the Brief and has determined that the default judgment against the remaining Defendants may proceed as outlined below.[1] The hearing on December 15, 2011 was vacated.

## BACKGROUND

Plaintiff filed the instant action on April 28, 2011. (Doc. 1). Defendants were served with the summons and complaint on July 11, 2011. (Docs. 5-7). The complaint alleges violations of Title 47 of the United States Code sections 605 and 553. Plaintiff also alleges a state law claim of conversion and a violation of California Business and Professions Code section 17200, *et seq*. (Doc. 1).

Defendants have not answered the complaint or otherwise appeared in this action. (Doc. 12-1 at pg. 2 lines 19-21 & Doc. 12-2 at ¶ 2). On August 17, 2011, the Clerk of the Court entered default against all Defendants. (Docs. 9-11).

Plaintiff filed the instant motion for default judgment on August 31, 2011. (Doc. 12). Plaintiff requests that the Court enter default judgment against Defendants in the amount of $116,200.00. (Doc. 12-2 at pg. 2). Despite being served with the motion by United States Mail, Defendants have not responded to the motion. (Doc. 12, at pg. 23). Defendants are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Doc. 12-2 at ¶3).

## Legal Standard

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or competent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or

---

[1] Plaintiff served a copy of the brief on all Defendants on November 31, 2011. (Doc. 22-1 at pg. 6).

2

1    (D) investigate any other matter.

"Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

**DISCUSSION**

*1.    Federal Claims*

Plaintiff seeks judgment pursuant to Title 47 of the United States Code section 605 against Defendants for unlawfully intercepting, receiving and exhibiting the *"The Floyd Mayweather v. Shane Mosley, Welterweight Championship Fight Program" on* May 1, 2010, at its commercial establishment located at 3050 West Shaw Avenue, Suite 116, in Fresno California. Plaintiff requests enhanced statutory damages in the amount of $110,000.00 pursuant 42 U.S.C. sections 605(e)(3)(B)(iii) and (c)(i) and $6,200.00 for state law conversion.

The relevant provisions of Title 47 of the United States Code section 605, which address unauthorized publication or use of wire or radio communications, state:

> (a) . . . no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney. . .. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge

3

>or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Additionally, the aggrieved party is authorized to obtain statutory damages of "not less than $1,000 or more than $10,000, as the court considers just" for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). The court may award enhanced damages up to $100,000 for each violation if it finds the violation was willfully committed for commercial advantage or private financial gain. 47 U.S.C. § 605 (e)(3)(C)(ii).

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the commercial exhibition licensing rights to the program at issue. Plaintiff marketed the sub-licensing (commercial exhibition) rights in the program to its commercial customers. (Doc. 12-4 at ¶ 3). Plaintiff contends that persistent signal piracy of its programming costs the company, its customers, and the community millions of dollars annually. (Doc. 12-4 at ¶ 11). Plaintiff believes this results in part from the perceived lack of significant consequences (including nominal or minimal damage awards by the Courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. (Doc. 12-4 at ¶ 12). As such, Plaintiff requests the maximum allowance for statutory violations, totaling $110,000.00. (Doc. 12-4 at ¶ 13).

Here, the summons and complaint were properly served on Defendants.[2] (Docs. 5-7). Thus, it appears that Defendants' default was properly entered, and the complaint is sufficiently well-pled. By his default, Defendants have admitted to willfully violating the referenced statutes for purposes of commercial advantage.

Although deterrence of future violations is an important objective of the statutes, the facts before the Court indicate that Defendants establishment is a bar and restaurant with a maximum capacity of approximately one hundred and fifty patrons inside the bar area. Lawrence Brooktez, an investigator for Plaintiff, submitted an affidavit indicating that the fight was being played in

---

[2] The complaints were served on Andre Lagrange at the restaurant who was identified as the person in charge. The complaints were later sent to Defendants via United States mail. Therefore, service is proper pursuant to Federal Rule of Civil Procedure 4(e) and 4(h)(1) and California Civil Procedure section 415.20.

the bar on a large projector screen about fifty-six inches wide as well as on three small televisions behind the bar. (Doc. 12-3). Patrons were standing both inside and outside of the bar with standing room only. Several security guards were both inside and outside of the bar. There were approximately fifty motorcycles in the parking lot surrounding the bar and it appeared that these were motorcycle clubs. Photographs of the establishment depict that the restaurant and bar is a large establishment, however, it is unclear from the photos whether other businesses also occupy the large space. (Doc. 12-3 at 4-8).

Given these circumstances, the Court will recommend the maximum statutory award of $10,000.00 for the violation pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and an additional $30,000 in enhanced damages pursuant to 47 U.S.C. § 605 (e)(3)(C)(ii).

  *2. Conversion*

Additionally, Plaintiff seeks $6,200.00 in conversion damages, the value of the property at the time of the conversion. (Doc. 26-5 at 8.) Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Cal.Rptr.3d 684 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, Defendants were operating a larger established business and had approximately one hundred and fifty patrons watching the program in question. Plaintiff was granted the exclusive

domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion.  (Doc. 12-5, ¶ 3.)  Defendants did not legally purchase the pay-per-view programming, *"The Floyd Mayweather v. Shane Mosley, Welterweight Championship Fight Program"* on May 1, 2010, which constituted Defendant's conversion by a wrongful act or disposition of property rights.  (Doc. 12 at pg. 20).  Finally, Plaintiff has indicated that the sub-license fee for an establishment similar in size to Defendants for the program would have been $6,200.00.  (Doc. 12-4 at Ex. 1.)  Thus, Plaintiff is entitled to damages for conversion in the amount of $6,200.00.

       3.     *Entry of Judgment Against Less Than All Defendants*

Here there is an issue regarding the pending bankruptcy against Giulia Paolilli.  It is clear that these proceedings are stayed against this Defendant pursuant to 11  U.S.C.§ 362.   However, the question remains whether default judgments should be entered as to the other defendants, Anthony Poalilli and Bonfiglios Inc.  Rule 54(b) of the Federal Rules of Civil Procedure provides "when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Federal Rule of Civil Procedure Rule 54(b).  The Ninth Circuit has noted that where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants.  *In re First T.D. & Investment Inc.*, 253 F. 3d 520, 532 (9th Cir. 2001) *citing Frow v. De La Vega,* 82 U.S. 552, 554 (1872).  The purpose of the rule is to avoid inconsistent judgments against defaulting defendants and the remaining answering defendants.  *Shanghai Automation Instrument Co., Ltd., v. Kuei*, 194 F. Supp. 2d 995 (N.D. Cal. 2001) citing *Frow*, 82 U.S. at 554-55. In this instance, however, the policy considerations underlying Rule 54(b) do not apply because default has been entered against all Defendants. Therefore, there is no risk of inconsistent results among the Defendants and the Court sees no just reason to delay these proceedings.

///

///

**RECOMMENDATIONS**

Based on consideration of the declarations, pleadings and exhibits the Court RECOMMENDS the following:

1. Plaintiff's application for default judgment be GRANTED IN PART;

2. Judgment be entered in this action against Defendants Bonfiglios Inc., and Anthony Paolilli individually and d/b/a B.B.'s Lounge and Oyster Bar & Grill a/k/a Giulia Italian Restaurant.  There is no reason to delay entry of judgement against these Defendants given that default has been entered against all three defendants including Ms. Poalilli;

3. Damages in the total amount of $ 46,620.00 be awarded as follows:

    a. For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $ 10,000.00;

    b. For the violation of 47 U.S.C. § 605 (e)(3)(C)(ii), the sum of $30,000.00; and

    c. For the conversion of Plaintiff's property, the sum of $ 6,200.00; and

4. Plaintiff shall file a status report no later than **February 29, 2012** outlining the status of the bankruptcy proceedings against the remaining Defendant Giulia Paolilli, as well as its intentions regarding pursing default judgment against her.

///
///
///
///
///
///
///
///
///

1  ///

3       These findings and recommendations are submitted to the district judge assigned to this
4  action, pursuant to Title 28 of the United States Code section 636(b)(1)(B).  Within **fifteen** (15)
5  days of service of this recommendation, any party may file written objections to these findings
6  and recommendations with the Court and serve a copy on all parties.  Such a document should be
7  captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district
8  judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of
9  the United States Code section 636(b)(1)(C).  The parties are advised that failure to file
10 objections within the specified time may waive the right to appeal the district judge's order.
11 *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
12     IT IS SO ORDERED.
13     Dated:   **December 14, 2011**         **/s/ Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE